UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PLYMOUTH TUBE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15 C 10353 |
| v. | ) | |
| | ) | Chief Judge Rubén Castillo |
| PILEPRO STEEL, LP, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plymouth Tube Company ("Plaintiff") brings this breach of contract action against Pilepro Steel, LP ("Defendant"), alleging that Defendant failed to pay for steel connectors that Plaintiff fabricated for Defendant. (R. 18, Am. Compl.) Before the Court is Plaintiff's unopposed motion for summary judgment. (R. 41, Mot.) For the reasons stated below, Plaintiff's motion is granted. The Court will enter a judgment of $210,144.15 in favor of Plaintiff and proceed to consider the post-judgment issues of interest, attorney's fees, and costs to which Plaintiff is entitled.

## RELEVANT FACTS

The following facts are undisputed. They are taken entirely from Plaintiff's Local Rule 56.1 statement of material facts, (R. 43, Rule 56.1 Statement of Material Facts [hereinafter "SOMF"]), and supporting evidence because Defendant has not opposed or otherwise responded to Plaintiff's motion for summary judgment or statement of material facts. Defendant is therefore deemed to have admitted Plaintiff's version of the facts. *See* N.D. ILL. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Sojka v. Bovis Lend*

*Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012) ("The obligation set forth in Local Rule 56.1 is not a mere formality. Rather it follows from the obligation imposed by FED. R. CIV. P. 56(e) on the party opposing summary judgment to identify specific facts that establish a genuine issue for trial." (citation, internal alteration, and quotation marks omitted)); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012) ("Because [the non-moving party] failed to file a response to [the moving party]'s Local Rule 56.1 statement of facts in the district court, we credit [the moving party]'s uncontroverted version of the facts to the extent that it is supported by evidence in the record.").

Plaintiff makes steel products, including steel connectors. (R. 43, SOMF ¶ 2.) Defendant gave Plaintiff specifications for steel connectors it wanted Plaintiff to fabricate from raw steel materials. (*Id.* ¶¶ 17, 19.) Plaintiff agreed to fabricate connectors to Defendant's specifications as set forth in a series of purchase orders that Defendant sent to Plaintiff. (*Id.* ¶¶ 18, 20; R. 41-1, Phillips Aff. ¶ 10, Ex. A.)

After receiving Defendant's purchase orders, Plaintiff sent Defendant purchase order "acknowledgments" in order to confirm acceptance and indicate the terms of acceptance of each purchase order. (R. 43, SOMF ¶ 21; R. 41-1, Phillips Aff. ¶ 11, Ex. B.) One of the "terms and conditions of acceptance" of each order acknowledgment provides that:

> Irrespective of any terms to the contrary in the customer order, this sales order acknowledgment is deemed to supersede any customer terms and conditions and incorporate by reference, as if fully set forth herein, the Plymouth Tube Company order acknowledgement/invoice terms and conditions as stated and available on our web site www.plymouth.com[.]

(*E.g.*, R. 41-1, Phillips Aff. Ex. B at 2.) Another term and condition of acceptance provides that "buyer's authorization to proceed to production shall be deemed to be buyer's consent to the terms of this sales order acknowledgement[.]" (*E.g., id.*) An additional term and condition of

acceptance provides that the terms and conditions from Plaintiff's website governing the parties' agreement were those terms and conditions "reflected on [Plaintiff's] web site as of the date of" the order acknowledgment. (*E.g., id.*)

Plaintiff submitted with its motion the terms and conditions reflected on its website from June 10, 2009, through June 30, 2014, and the terms and conditions reflected on the website from July 1, 2014, through present, which vary slightly from the terms and conditions previously in effect. (*See id.* Exs. D, E.) The order acknowledgements for the steel connectors at issue in this case are not dated, nor has Plaintiff specified the date of those order acknowledgments. (*See id.* Ex. B.) Both the June 10, 2009, through June 30, 2014, website terms and conditions and the July 1, 2014, through present website terms and conditions provide for recovery of interest, attorney's fees, and costs. (*See id.* Exs. D, E.) With respect to recovery of interest, the website terms and conditions provide that any amounts not paid by the due date as indicated on the face of Plaintiff's invoices are subject to an interest charge of one and one half percent per month until paid, which is equivalent to an interest charge of eighteen percent per year. (*Id.* at Ex. D ¶ 3, Ex. E ¶ 3.) With respect to attorney's fees and costs, the website terms and conditions provide that: "If [Defendant] shall fail to make payments in accordance with the terms as set forth in this acknowledgment, [Plaintiff] shall be entitled to reimbursement for all collection and related reasonable attorney fees and legal costs from [Defendant] in order to secure the payments due." (*Id.* at Ex. D ¶ 12(c), Ex. E ¶ 12(c).) The terms and conditions also provide that Illinois law governs the parties' agreement. (*Id.* at Ex. D ¶ 15, Ex. E ¶ 15.) Plaintiff states that these terms and conditions from its website were part of the parties' agreement. (R. 43, SOMF ¶¶ 59-60; R. 41-1, Phillips Aff. ¶¶ 33-34.)

Upon fabrication and shipment of each order, Plaintiff issued invoices to Defendant consistent with the parties' agreement. (R. 43, SOMF ¶ 22; R. 41-1, Phillips Aff. Ex. C.) The invoices included freight charges to Defendant pursuant to the parties' agreement and course of dealing. (R. 43, SOMF ¶ 23; R. 41-1, Phillips Aff. ¶ 13.) The particular unpaid invoices that form the basis of the present dispute (the "Invoices") were issued to Defendant as summarized in this chart:

| Invoice Number | Purchase Order Number | Invoice Date[1] | Date Order Shipped | Invoice Amount |
|---|---|---|---|---|
| 141316 | 648 | July 30, 2014 | July 29, 2014 | $15,156.15 |
| 143253 | 637 | September 19, 2014 | September 19, 2014 | $34,408.30 |
| 143430 | 637 | September 24, 2014 | September 23, 2014 | $27,720.90 |
| 141339 | 651 | July 30, 2014 | July 30, 2014 | $21,377.82 |
| 144649 | 644 Rev A | October 28, 2014 | October 27, 2014 | $20,114.17 |
| 144650 | 645 Rev A | October 28, 2014 | October 27, 2014 | $19,853.60 |
| 144651 | 646 Rev A | October 28, 2014 | October 27, 2014 | $20,351.86 |
| 144784 | 636 Rev C | October 31, 2014 | October 30, 2014 | $28,805.88 |
| 144785 | 643 Rev A | October 31, 2014 | October 30, 2014 | $22,355.47 |
| | | | **Total:** | **$210,144.15** |

---

[1] The Court notes that some of the invoice dates stated in the SOMF differ from the dates on the actual invoices. (*Compare* R. 43, Rule 56.1 Statement of Material Facts [hereinafter "SOMF"] ¶ 25 (stating that invoice 144650 was dated August 21, 2014), *with* R. 41-1, Phillips Aff. Ex. C (attaching invoice 144650, dated October 28, 2014).) The Court will rely on the record evidence instead of the SOMF, as the Court must "eliminate from consideration any argument, conclusions, and assertions that are unsupported by the documented evidence of record offered in support of the statement." *Howard v. Inland SBA Mgmt. Corp.*, 32 F. Supp. 3d 941, 949 (N.D. Ill. 2014).

4

(*See* R. 41-1, Phillips Aff. Exs. A, C.) Each Invoice contains the following language: "This Invoice is subject to Plymouth Tube Co. Invoice Terms and Conditions as stated and available on our web-site WWW.PLYMOUTH.COM." (*E.g.*, R. 41-1, Phillips Aff. Ex. C at 1.)

The parties agreed that Invoices were to be paid within thirty days upon shipment of the steel connectors. (*See* R. 41-1, Phillips Aff. ¶ 14, Ex. A (stating that payment was required within "net 30" days); R. 43, SOMF ¶¶ 18, 24, 29.) Plaintiff shipped the steel connectors referenced in the Invoices, and Defendant received and accepted those steel connectors. (R. 41-1, Phillips Aff. ¶¶ 21-22, 30-31; R. 43, SOMF ¶¶ 36-38, 43-44, 51, 56.) Plaintiff fabricated and shipped them in the quantities described in the Invoices, and in compliance with the purchase orders and Defendant's specifications. (R. 41-1, Phillips Aff. ¶¶ 20-21, 28-29, 35; R. 43, SOMF ¶¶ 35-36, 42-43, 49-50, 54.) Defendant never disputed Plaintiff's performance under the purchase orders, nor did Defendant ever dispute the amounts invoiced. (R. 43, SOMF ¶¶ 31-32, 39, 45; R. 41-1, Phillips Aff. ¶¶ 23-24, 38-39, 41.) Defendant never returned or rejected any of the steel connectors; rather, Defendant continues to retain the steel connectors referenced in the Invoices. (R. 43, SOMF ¶¶ 37-38; R. 41-1, Phillips Aff. ¶¶ 30-31, 40.)

Defendant did not pay the Invoices, (R. 43, SOMF ¶¶ 40, 55, 57; R. 41-1, Phillips Aff. ¶¶ 32, 36, 44), even though it paid all other invoices Plaintiff issued, which were subject to the same terms and conditions as the Invoices in question. (R. 43, SOMF ¶ 54; R. 41-1, Phillips Aff. ¶ 43.)

## PROCEDURAL HISTORY

On October 1, 2015, Plaintiff filed a complaint against Defendant in the Circuit Court of Cook County, Illinois. (R. 1, Notice of Removal.) On November 16, 2015, Defendant removed the action to this Court on the basis of diversity jurisdiction. (*Id.*) On December 10, 2015, the

5

Court dismissed the case without prejudice to Plaintiff's filing of a timely motion to remand or an amended complaint. (R. 8, Min. Entry.) Plaintiff then filed a motion to remand that the Court denied. (R. 9, Mot.; R. 14, Order.)

On March 30, 2016, Plaintiff filed an amended complaint in this Court. (R. 18, Am. Compl.) The amended complaint alleges that Defendant breached its contract with Plaintiff by failing to pay the Invoices, and seeks recovery of interest, attorney's fees, and costs. (*Id.* ¶¶ 26-32.) In the alternative, the amended complaint asserts causes of action for unjust enrichment and "account stated" for the same conduct. (*Id.* ¶¶ 33-47.)

On April 27, 2016, Defendant filed an answer to the amended complaint and also filed counterclaims against Plaintiff alleging fraudulent inducement, promissory estoppel, breach of contract, and "set off and recoupment." (R. 22, Answer ¶¶ 1-21.) Plaintiff moved to dismiss all of the counterclaims, (R. 24, Mot.), but Defendant amended them, rendering moot Plaintiff's motion to dismiss. (R. 26, Min. Entry; R. 27, Am. Countercl.) Plaintiff moved to dismiss the amended counterclaims. (R. 29, Mot.) That motion, however, was also rendered moot because Defendant was granted leave to file a second amended counterclaim, but never did. *See* (R. 32, Min. Entry; R. 34, Min. Entry.)

On July 10, 2017, Plaintiff filed its motion for summary judgment and an accompanying memorandum of law and SOMF. (R. 41, Mot.; R. 42, Mem.; R. 43, SOMF.) On the same day, Plaintiff filed a motion to amend the summary judgment briefing schedule,[2] which requested that the Court give Defendant until August 15, 2017, to file a response to Plaintiff's motion for summary judgment. (R. 44, Mot.) Defendant agreed to the motion and the proposed revised

---

[2] The Court had already extended the dispositive motions deadline at this point. (R. 38, Min. Entry; R. 40 Min. Entry.)

briefing schedule. (*Id.* ¶ 3.) The Court granted this motion. (R. 46, Min. Entry.) Defendant, however, never responded to Plaintiff's motion for summary judgment.

Plaintiff's motion for summary judgment argues that there is no genuine dispute of material fact that Defendant breached its contract with Plaintiff by failing to pay the Invoices. (*See* R. 42, Mem. ¶¶ 13-20.) In the alternative, Plaintiff claims that the lack of any genuine dispute of material fact as to Defendant's failure to pay the Invoices warrants summary judgment on its claims of unjust enrichment and account stated. (*See id.* ¶¶ 21-25.) Plaintiff requests judgment in the principal amount of $210,144.17, and also requests an award of interest, attorney's fees, and costs pursuant to interest and attorney's fees provisions in the parties' agreement. (*See* R. 41, Mot.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014) (citation and internal quotation marks omitted).

"Where a party fails to respond to a motion for summary judgment, the Court may exercise its discretion properly and rule on the merits of the unopposed motion." *United Cent. Bank v. Findley*, No. 12 C 1405, 2013 WL 5408660, at *2 (N.D. Ill. Sept. 26, 2013). "A non-

movant's failure to respond to a motion for summary judgment[,]" however, "does not automatically result in a judgment for the movant." *PNC Bank, Nat'l Ass'n v. Dubin*, No. 11 C 2126, 2012 WL 28766, at *1 (N.D. Ill. Jan. 5, 2012). The movant still bears "the burden of offering proof as to all of the elements of their claim demonstrating that they are entitled to judgment, whether or not the [non-moving party] offers proof to the contrary." *Laborers' Pension Fund v. Loucon Constr.*, No. 98 C 6227, 2004 WL 2538298, at *5 (N.D. Ill. Sept. 28, 2004). "[S]ummary judgment motions, even when unopposed, must be carefully scrutinized to ensure that the record warrants the relief requested." *Crisafulli v. Garcia*, 380 F. Supp. 2d 986, 987 (N.D. Ill. 2005). The Court must still construe all uncontroverted facts and reasonable inferences in the light most favorable to Defendant. *Deutsche Bank Tr. Co. Ams. v. Messervey*, No. 1:12-CV-07718, 2013 WL 6009499, at *1 (N.D. Ill. Nov. 13, 2013).

## ANALYSIS

### I. Plaintiff's Legal Claims

Plaintiff brings claims for breach of contract, and, in the alternative, for unjust enrichment and account stated. No choice of law issue has been raised on summary judgment, and there is no dispute that the parties' agreement has a choice of law clause providing that Illinois law governs the parties' agreement. (*See* R. 41-1, Phillips Aff. Ex. D ¶ 15, Ex. E ¶ 15; R. 42, Mem.) Accordingly, the Court will apply Illinois' substantive law in its analysis. *See Selective Ins. Co. of S.C. v. Target Corp.*, 845 F.3d 263, 266 (7th Cir. 2016) ("If no party raises a choice of law issue to the district court, the federal court may simply apply the forum state's substantive law." (citation omitted)), *as amended* (Jan. 25, 2017); *Hendricks v. Novae Corp. Underwriting, Ltd.*, 868 F.3d 542, 545 (7th Cir. 2017) ("Under Illinois law the contract's choice-of-law clause generally controls[.]").

Under Illinois law, "[i]n order to establish a claim for breach of contract, a plaintiff must allege and prove the following elements: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Burkhart v. Wolf Motors of Naperville, Inc.*, 2016 IL App (2d) 151053, ¶ 14 (citation and internal quotation marks omitted), *appeal denied sub nom. Burkhart v. Wolf Motors of Naperville, Inc.*, 77 N.E.3d 81 (Ill. 2017); *see also TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) (reciting the same elements for breach of contract). "A contract for the sale of goods is governed by the UCC." *NewSpin Sports LLC v. Arrow Elec., Inc.*, No. 17 C 345, 2017 WL 3169045, at *2 (N.D. Ill. July 26, 2017). "Goods" are all things, including specially manufactured goods, which are movable. 810 ILL. COMP. STAT. 5/2-105. The agreement at issue in this case involved the sale of steel connectors, which are movable goods pursuant to Illinois' Uniform Commercial Code ("UCC"). Accordingly, Illinois' UCC governs this case.

The Court concludes that Plaintiff has satisfied its burden of showing that there is no genuine issue as to any material fact based on the pleadings, admissions, and affidavits on file, and that Plaintiff is entitled to judgment as a matter of law on its breach of contract claim. *See Celotex Corp.*, 477 U.S. at 322.

With respect to the first element for breach of contract, there is no genuine dispute of material fact that Plaintiff and Defendant entered into a valid and enforceable contract. "A valid and enforceable contract requires an offer, an acceptance, and consideration." *Sheth v. SAB Tool Supply Co.*, 2013 IL App (1st) 110156, ¶ 68; *see also Boundas v. Abercrombie & Fitch Stores, Inc.*, No. 10 C 04866, 2015 WL 5116821, at *3 (N.D. Ill. Aug. 28, 2015) ("Under Illinois law, a valid and enforceable contract requires an offer, acceptance, consideration, and mutual assent.").

Under Illinois' UCC, "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." 810 ILL. COMP. STAT. 5/2-204. "[A]n order . . . to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods." 810 ILL. COMP. STAT. 5/2-206(b).

Defendant's purchase orders constitute an offer to buy custom-made steel connectors for prompt shipment. (R. 43, SOMF ¶¶ 17-20; R. 41-1, Phillips Aff. ¶ 10, Ex. A.) These purchase orders, therefore, invited Plaintiff's acceptance by a prompt promise to ship the steel connectors. 810 ILL. COMP. STAT. 5/2-206(b); *see also Jada Toys, Inc. v. Chi. Imp., Inc.*, No. 07 C 699, 2009 WL 3055370, at *6 (N.D. Ill. Sept. 18, 2009) ("Each order by Chicago Import to Jada constituted an offer to purchase goods. Jada's prompt shipment of the goods constituted acceptance of each offer."). Plaintiff accepted Defendant's offer by sending Defendant order acknowledgments that promised to ship the steel connectors pursuant to Plaintiff's specifications. (R. 43, SOMF ¶ 21; R. 41-1, Phillips Aff. ¶ 11, Ex. B.) Indeed, the parties entered into other contracts through the same course of conduct that Defendant later honored by paying invoices pursuant to those contracts. (R. 41-1, Phillips Aff. ¶ 43.) Finally, the parties' agreement is supported by bargained-for consideration, namely, steel connectors in exchange for money. *See Lindy Lu LLC v. Ill. Cent. R. Co.*, 2013 IL App (3d) 120337, ¶ 22 ("Consideration is some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss of responsibility given, suffered or undertaken by the other."). Accordingly, the parties entered into a valid and binding contract for the sale of steel connectors.

There is also no genuine dispute of material fact as to the remaining elements of Plaintiff's breach of contract claim. Plaintiff performed under the parties' agreement and shipped the steel connectors to Defendant according to Defendant's specifications. (R. 41-1, Phillips Aff. ¶¶ 20-21, 28-29, 35; R. 43, SOMF ¶¶ 35-36, 42-43, 49-50, 54.) The parties' agreement required Defendant to pay for the steel connectors, and Defendant breached this provision by failing to pay for them. (R. 43, SOMF ¶¶ 18-25, 40, 55, 57.) Plaintiff was injured by not receiving $210,144.15 it invoiced Defendant pursuant to the parties' agreement. (*See id.*) Accordingly, Plaintiff is entitled to judgment as a matter of law on its breach of contract claim. The Court need not consider Plaintiff's unjust enrichment and account stated claims because they are brought in the alternative to Plaintiff's breach of contract claim. *See Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 623 (N.D. Ill. 2008) ("The law is clear that [plaintiff] cannot *recover* under both a breach of contract theory and an unjust enrichment theory." (emphasis in original)); *Enduracare Therapy Mgmt., Inc. v. Cornerstone Healthcare of Ill., Inc.*, No. 4:05-CV-04112-JPG, 2006 WL 1452824, at *3 (S.D. Ill. May 22, 2006) ("However, should [plainitff] prevail on its claim for breach of the Agreement, the instrument that formed the basis for the transactions between the parties from which the account stated arose, its claim for an account stated will be moot and subject to dismissal.").

## II. Plaintiff's Damages

Plaintiff requests judgment in an amount of $210,144.17, plus interest, attorney's fees, and costs. (R. 41, Mot.) The Court first addresses Plaintiff's entitlement to the principal amount of $210,144.17, and then addresses Plaintiff's entitlement to interest, attorney's fees, and costs.

### A. Principal Amount

Once a buyer accepts goods, it must pay the contract price for those goods. 810 ILL. COMP. STAT. 5/2-607; *see also Tegrant Alloyd Brands, Inc. v. Merch. of Tennis, Inc.*, No. 08 C

11

50041, 2011 WL 249469, at *2 (N.D. Ill. Jan. 26, 2011) ("Under Illinois law, a buyer must pay for the goods it accepts[.]" (citation omitted and internal quotation marks omitted)). Acceptance occurs when "the buyer (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or (b) fails to make an effective rejection" of the goods, "but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or (c) does any act inconsistent with the seller's ownership[.]" 810 ILL. COMP. STAT. 5/2-606(1). "When the buyer fails to pay the price as it becomes due the seller may recover . . . the price of goods accepted[.]" 810 ILL. COMP. STAT. 5/2-709(a)(1); *see also Real Colors, Inc. v. Patel*, 39 F. Supp. 2d 978, 991 (N.D. Ill. 1999) ("In Illinois, when a buyer accepts goods, the seller is entitled to recover the contract price.").

Defendant accepted the steel connectors referenced in the Invoices, did not reject them after a reasonable opportunity to inspect them, and continues to retain them, which is wholly inconsistent with any notion that Plaintiff owns those steel connectors. (R. 41-1, Phillips Aff. ¶¶ 21-22, 30-31, 40; R. 43, SOMF ¶¶ 36-38, 43-44, 51, 56.) Consequently, Defendant accepted the goods within the meaning of 810 ILL. COMP. STAT. 5/2-606. Plaintiff is therefore entitled to recover the contract price for the goods accepted. 810 ILL. COMP. STAT. 5/2-709(a)(1).

The amount owed on the Invoices reflects the contract price for the steel connectors Defendant accepted and failed to pay for. (R. 41-1, Phillips Aff. ¶¶ 12, 28-30.) Plaintiff's affidavit in support of its motion for summary judgment states that the total amount Defendant owes for the Invoices is $210,144.15, exclusive of interest. (R. 41-1, Phillips Aff. ¶ 44.) That

amount is consistent with the Court's review of the Invoices.[3] Thus, there is no genuine dispute of material fact that the contract price for the Invoices is $210,144.15, and Plaintiff is entitled to recover that amount.

## B. Interest, Attorney's Fees, and Costs

Plaintiff claims it is entitled to interest on the contract price, attorney's fees, and costs because the terms and conditions on its website were part of the parties' agreement, and those terms mandate Plaintiff's recovery of interest, attorney's fees, and costs. (*See* R. 41, Mot.) Plaintiff is entitled to recover those additional amounts pursuant to Plaintiff's website terms if those terms were part of the parties' agreement. *See, e.g., Bright Horizons Children's Ctrs., LLC v. Riverway Midwest II, LLC*, 931 N.E.2d 780, 798 (Ill. App. Ct. 2010) ("[C]ontractual 'fee-shifting' provisions for the award of attorney fees will be enforced by the courts."); *Ill. Health Maint. Org. Guar. Ass'n v. Shapo*, 826 N.E.2d 1135, 1160 (Ill. App. Ct. 2005) ("[W]e conclude that the trial court's refusal to impose prejudgment interest at a rate of 1.5% per month as provided by the settlement agreement constituted an abuse of discretion.").

At the outset, there is no dispute that Defendant agreed, as a matter of fact, to include Plaintiff's website terms in the parties' agreement. (R. 43, SOMF ¶¶ 52, 59 (stating that Plaintiff's website terms "are specifically part of the agreement between the parties"); R. 41-1, Phillips Aff. ¶ 33 (same).)

In addition, the order acknowledgments incorporated the website terms by reference into the parties' agreement as a matter of law. "In order for a contract to incorporate another document by reference, the contract must show an intent to incorporate the other document and

---

[3] Plaintiff's request for $210,144.17 is two cents higher than the sum of the Invoices and not supported by Plaintiff's affidavit or the Invoices themselves. *See Howard*, 32 F. Supp. 3d at 949 (ruling that the Court must "eliminate from consideration any argument, conclusions, and assertions that are unsupported by the documented evidence of record offered in support of the statement.").

13

make it part of the contract itself." *Innovative Mech. Grp., Inc. v. Fitness Int'l, LLC*, 2016 IL App (1st) 151813-U, ¶ 17. That test is satisfied here. The order acknowledgments clearly state that they "incorporate by reference, as if fully set forth [therein], the Plymouth Tube Company Order Acknowledgment Terms and Conditions as stated and available on [Plaintiff's] web site www.plymouth.com[.]" (R. 41-1, Phillips Aff. Ex. B.) The order acknowledgments also provide that the applicable website terms and conditions are "those in effect as reflected on [Plaintiff's] web site as of the date of [the] order acknowledgment." (*Id.*) The terms and conditions reflected on Plaintiff's website from 2009 to the present day have the same provisions for recovery of interest at eighteen percent per year and reasonable attorney's fees and legal costs. (*See* R. 41-1, Phillips Aff. Ex. D ¶¶ 3, 12(c), Ex. E ¶¶ 3, 12(c).) While Plaintiff does not specify the date of the order acknowledgments, it is undisputed that they were sent within this time period because the oldest purchase order at issue in this case is dated April 25, 2014. (*See* R. 43, SOMF ¶ 25; Phillips Aff. Ex. A at 1 (purchase order dated April 25, 2014), Ex. B (order acknowledgments confirming, among other things, the date of shipment, the quantity of steel connectors to be shipped, and the corresponding purchase order for each shipment, thus indicating that the order acknowledgments were issued after the purchase orders).) Accordingly, no matter the exact date of each order acknowledgment, they all indisputably incorporate by reference into the parties' agreement the same attorney's fees, costs, and interest provisions from Plaintiff's website.

There is also no genuine dispute that the terms of the order acknowledgments were part of the parties' agreement such that their incorporation of the website's attorney's fees, costs, and interest provisions are enforceable against Defendant. Defendant conceded to the order acknowledgments' terms by proceeding to production and accepting the steel connectors. (*See* R. 41-1, Phillips Aff. Ex. B at 2 (providing that such conduct "shall be deemed to be buyer's

consent to the terms" of the order acknowledgment).) Nor is there any dispute that the order acknowledgments confirmed the parties' agreement and course of dealing—Defendant paid numerous other invoices subject to the order acknowledgments' terms and conditions. (*Id.* ¶¶ 25, 43.) Thus, the order acknowledgments' terms were part of the parties' agreement, and not "different" or "additional" terms that would implicate 810 ILL. COMP. STAT. 5/2-207(1). *See* 810 ILL. COMP. STAT. 5/2-204 ("A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.").

Even assuming the order acknowledgments did have "additional" or "different" terms and implicate Section 5/2-207, they would still operate as an acceptance. 810 ILL. COMP. STAT. 5/2-207(1). There is no dispute the parties are "merchants" pursuant to 810 ILL. COMP. STAT. 5/2-104(1) given their repeat transactions and the quantities of steel products they buy and sell. (*See, e.g.*, R. 41-1, Phillips Aff. Ex. A.) Thus, any additional or different terms in the order acknowledgments would be incorporated into the parties' agreement pursuant to 810 ILL. COMP. STAT. 5/2-207(2) because the purchase orders did not limit acceptance to their terms, and any terms in the order acknowledgments would not materially alter the parties' agreement because, as noted above, Defendant paid numerous invoices subject to the same terms. *See Jada Toys*, 2009 WL 3055370, at *8-*9 (ruling that interest and attorney's fees provisions did not materially alter parties' contract because the parties had engaged in several transactions subject to the same provisions). Nor did Defendant ever object to any terms in the order acknowledgments; rather, Defendant allowed the transactions to proceed and still retains the steel connectors. (*E.g.*, R. 43, SOMF ¶¶ 37-38.) Thus, there is no genuine dispute of material fact that the terms of the order

acknowledgments—including but not limited to the attorney's fees, costs, and interest provisions—apply to the parties' agreement.

The interest provision in the parties' agreement provides that "any amounts not paid by due date as indicated on the face of" each "invoice . . . shall be subject to a finance charge of 1-1/2% per month until paid[,] the rate of said finance charge being equivalent to an annual percentage rate of 18% per annum." (R. 41-1, Phillips Aff. Ex. D ¶ 3, Ex. E ¶ 3.) Defendant has not paid the Invoices by their due date as indicated on the face of each Invoice. Pursuant to the plain language of the parties' agreement, Plaintiff is entitled to interest in the amount of 18% of each invoice compounded annually from the due date for payment on the face of each invoice up until the date such invoice is paid in full. Plaintiff shall submit a statement within fourteen days of this order stating the exact amount of interest it is entitled to based on the parties' agreement and this order, and how Plaintiff arrives at the amount.

Plaintiff is entitled to reasonable attorney's fees and legal costs as a matter of law pursuant to the parties' agreement, but Plaintiff has not claimed any specific amount or provided any evidence concerning a reasonable award of attorney's fees and costs. *See* N.D. ILL. L.R. 54.3 (generally requiring a party, for an award of attorney's fees and costs, to satisfy a number of procedures and prove amounts owed). Plaintiff instead reserved the right to submit such evidence to the Court. Plaintiff, therefore, shall follow the procedures for filing a motion for attorney's fees and costs pursuant to Local Rule 54.3.

## CONCLUSION

For the foregoing reasons, Plaintiff's unopposed motion for summary judgment, (R. 41), is GRANTED. The Clerk of the Court is directed to enter a judgment of $210,144.15 in favor of Plaintiff. Plaintiff is ORDERED to file, within fourteen days of this order, a statement consistent with this order that details the amount of interest to which it is entitled. Defendant shall have seven days from the filing of Plaintiff's statement to file a response. In addition, Plaintiff is ORDERED to file within twenty-one days a motion for attorney's fees and costs consistent with this order and the procedures set forth in Local Rule 54.3. The parties are also encouraged to attempt to settle these post-judgment issues via an agreed order.

ENTERED: _____
**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: October 19, 2017**